IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **WADHAH RAAD ALMILAJI,** | * | |
|     **Plaintiff,** | * | |
| v. | | Case No.: GJH-18-2435 |
| | * | |
| **JS INTERNATIONAL, INC,** | | |
| | * | |
|     **Defendant.** | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Wadhah Raad Almilaji brought this civil action against Defendant JS International, Inc., alleging breach of contract, or in the alternative, detrimental reliance, unjust enrichment, quantum meruit, or quantum valebant. Pending before the Court is Plaintiff's unopposed Motion for Summary Judgment on all Claims. ECF No. 26. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Plaintiff's Motion for Summary Judgment is granted, in part, and denied, in part.

**I.    BACKGROUND**

    **A.    Factual Background**[1]

In June 2017, Defendant, a general contracting company, ECF No. 6-1 ¶ 6; ECF No. 13 ¶ 6, appointed Plaintiff as the branch manager for its new Iraq branch. ECF No. 26-2 ¶ 2; ECF No. 26-3. As part of this appointment, Defendant authorized Plaintiff to act on Defendant's behalf. ECF No. 26-2 ¶ 2; ECF No. 26-3. The instant action arises out of four instances where Plaintiff exercised this authority: (1) the procurement and supplying of modular containers for

---

[1] These facts are either undisputed or viewed in the light most favorable to Defendant as the non-moving party.

1

one of Defendant's subcontractors, ECF No. 6-1 ¶¶ 7–11; ECF No. 26-2 ¶¶ 3–7; (2) the purchase of a batch plant from Babylon Company, ECF No. 6-1 ¶¶ 12–13, 17; ECF No. 26-2 ¶¶ 8–9, 13; (3) the procurement of a commercial lease for office space in Baghdad, ECF No. 6-1 ¶¶ 13–15; ECF No. 26-2 ¶¶ 9–11; and (4) the procurement of visas for several of Defendant's employees, ECF No. 6-1 ¶ 16; ECF No. 26-2 ¶ 12.

### 1. The Procurement of Modular Containers

In July 2017, Defendant directed Plaintiff to procure and supply modular containers that would serves as the living quarters for one of Defendant's subcontractors, a Turkish company called Limitless. ECF No. 26-2 ¶ 3. Limitless had previously contracted with an individual named Hayder Raad Abed, who had failed to provide the materials required. *Id.* ¶ 4; ECF No. 26-4.[2] Consequently, Defendant directed Plaintiff to perform in the place of Mr. Abed and promised to pay Plaintiff accordingly. ECF No. 26-2 ¶ 5. Plaintiff procured the modular living containers and other necessary supplies and equipment, including, but not limited to, air conditioning units, water tanks, cables, pipes, beds, tables, and office and residential furniture. *Id.* ¶ 6. These containers, supplies, and equipment—which were purchased with funds Plaintiff provided and/or with funds Mustaga Muwafaq Wahhab provided,[3] *id.* ¶ 15—were delivered to Defendant on or about July 28, 2017. *Id.* ¶ 6. The total cost to Plaintiff for the procurement of the containers, supplies, and equipment was $547,440.00. *Id.* ¶ 6; ECF No. 26-5 (copies of receipts from some of these purchases).[4] Between July 28, 2017 and December 20, 2017, Defendant

---

[2] Plaintiff provides the original contract between Limitless and Mr. Abed. ECF No. 26-4. Schedule 4 of this contract outlines the items Limitless required and their prices. ECF No. 26-4 at 9.

[3] Mr. Wahhab has assigned his interest(s) in any claim(s) against Defendant to Plaintiff. ECF No. 26-2 ¶ 15; ECF No. 26-12.

[4] The receipts Plaintiff provides are in Arabic. ECF No. 26-5. However, Defendant previously provided translations, ECF No. 8-2, at the motion to dismiss stage in order to argue that the prices reflected on the receipts do not align with the damages Plaintiff seeks. *See, e.g.*, ECF No. 8-1 at 5. Plaintiff responded that the receipts reflect only a

made partial payments to Plaintiff for the modular containers and the related supplies and equipment. ECF No. 26-2 ¶ 7. These payments total $400,000, leaving a balance of $147,000 due to Plaintiff. *Id.*

### 2. The Purchase of a Batch Plant

On October 15, 2017, Defendant directed Plaintiff to order a batch plant—a mechanical structure capable of mixing, storing, and casting concrete—from Babylon Company. *Id.* ¶ 8. The purchase of the batch plant was funded by Plaintiff and/or Mr. Wahhab. *Id.* ¶ 15. Defendant agreed to purchase the batch plant for $63,000, but only paid Plaintiff $44,000, leaving a balance of $19,000. *Id.* ¶ 8; ECF No. 26-6 (purchase order for the batch plant listing the vendor as Babylon Company and the cost as $63,000).[5] The batch plant was delivered to Defendant on November 5, 2017. ECF No. 26-2 ¶ 9. On January 25, 2018, Jim Pugh, Defendant's general manager, emailed Plaintiff and acknowledged the then-remaining debt for the batch plant, which was $38,000 at the time, and told Plaintiff that Defendant was making a second payment for "50% of the remaining $38,000[,]" bringing the amount Defendant owed Plaintiff to the current balance of $19,000. *Id.* ¶ 13; ECF No. 26-11.

### 3. The Procurement of Office Space

In November 2017, Defendant directed Plaintiff to procure office space in Baghdad to be used as Defendant's offices. ECF No. 26-2 ¶ 9. Plaintiff procured a commercial lease on

---

portion of the cost of the modular living containers and related supplies. ECF No. 9-1 at 2. Plaintiff's response is consistent with the alleged translation of the two receipts, which do not reflect the purchase of any of the supplies (cables, pipes, beds, tables, furniture, etc.) that Plaintiff purchased. *See* ECF No. 8-2.

[5] Plaintiff's name does not appear on the purchase order, ECF No. 26-6, but Plaintiff's affidavit—which Defendant has not contested—states that Plaintiff or Mr. Wahhab funded the purchases made on behalf of Defendant. ECF No. 26-2 ¶ 15. As discussed above, Mr. Wahhab has assigned his interest(s) in any claim(s) against Defendant to Plaintiff. *Id.*; ECF No. 26-12.

Defendant's behalf at a cost of $12,000. *Id.*; ECF No. 26-7 (copy of the lease);[6] ECF No. 26-9 (invoice for "[o]ne year lease for JSI office"). On November 24, 2017, Defendant wired Plaintiff a partial payment of $1,000 for the office lease. ECF No. 26-2 ¶ 10; ECF No. 26-8 (wire details). On the same day, Plaintiff issued an invoice to Defendant for the remaining $11,000 balance owed on the office lease. ECF No. 26-2 ¶ 11; ECF No. 26-9 (invoice reflecting balance of $12,000).

### 4. The Procurement of Visas

In December 2017, Defendant directed Plaintiff to procure visas for several employees who were to begin work in Iraq. ECF No. 26-2 ¶ 12. Defendant agreed to pay Plaintiff for those visas. ECF No. 13 at 5.[7] Plaintiff procured visas for seven individuals at a cost of $22,000. ECF No. 26-2 ¶ 12; ECF No. 26-10 (total balance of $22,000 for the processing of seven visas plus one visa expiration fine). The employees never arrived in Iraq, however, and Plaintiff is still in possession of their visas. ECF No. 26-2 ¶ 12. Defendant has refused to pay for the visas, the related processing, and Plaintiff's procurement services. *Id.* Plaintiff issued invoices to Defendant relating to the visas on December 28, 2017 and January 13, 2018. ECF No. 26-10.

### B. Procedural Background

Plaintiff initiated this action on August 9, 2018, ECF No. 1, and filed a Motion for Leave to File Amended Complaint on December 10, 2018, ECF No. 6. The Court granted Plaintiff's

---

[6] Plaintiff provides a copy of the commercial lease; however, the lease is in Arabic. ECF No. 26-7. Defendant provided a translation of this lease as part of its earlier Motion to Dismiss, ECF No. 8-3. According to this translation—which Defendant provided without an accompanying affidavit testifying to the translation's accuracy—Plaintiff's name is not on the lease, the rent on the lease is $24,000/year, and the rent has been paid in full for one year. ECF No. 8-3. None of these facts directly contradict Plaintiff's affidavit, which states that "purchases made on behalf of JSI were funded by" Plaintiff and Mr. Wahhab, ECF No. 26-2 ¶ 15, and Defendant owes Plaintiff $11,000 for procurement of the commercial lease, *id.* ¶ 11.

[7] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Motion for Leave to File Amended Complaint on January 9, 2019. ECF No. 7. Defendant filed a Motion to Dismiss First Amended Complaint on January 22, 2019, ECF No. 8, which the Court denied on July 15, 2019, ECF Nos. 11 & 12. Defendant filed its Answer to First Amended Complaint and a Counterclaim on July 30, 2019. ECF No. 13. In the Counterclaim, Defendants allege that Plaintiff represented himself as a vendor and expert in Iraqi business matters, and, based on those representations, Defendant hired Plaintiff to supply certain requirements to Defendant. ECF No. 13 at 5. However, during Plaintiff's vendor relationship with Defendant, Plaintiff allegedly falsified documentation and information, including invoices and contracts, and failed to deliver what he promised. *Id.* Plaintiff filed his Answer to Defendant's Counterclaim on August 14, 2019. ECF No. 15.

On September 1, 2020, Defendant's counsel filed a Motion to Withdraw as Attorney, stating "counsel has been unable to communicate with the client or any of its representatives despite repeated calls and written communications over several months" and certifying that a written notice had been mailed to Defendant "notifying it that it must have new counsel enter an appearance or be subject to the dismissal of its claims and/or default judgment on claims against it." ECF No. 21 at 1. The Court granted Defendant's counsel's Motion to Withdraw on October 30, 2020. ECF No. 25.

Plaintiff filed the instant Motion for Summary Judgment on November 18, 2020. ECF No. 26. A Rule 12/56 notice was mailed to Defendant the following day, ECF No. 28, along with an additional notice that if Defendant did not have new counsel enter an appearance within 30 days of its previous counsel's withdrawal, "the Court may take such action, if any, that it deems appropriate, including . . . dismissing any affirmative claim for relief asserted by the party and/or directing the party to show cause why a default should not be entered on claims asserted against

5

it[,]" ECF No. 27. Defendant has not responded to Plaintiff's Motion for Summary Judgment or otherwise communicated with the Court since its counsel's withdrawal.

## II.     STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The burden is on the moving party to demonstrate that there exists no genuine dispute of material fact. *See Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). Once the moving party has properly filed evidence supporting the motion for summary judgment, to defeat the motion, the nonmoving party must submit evidence showing facts sufficient for a fair-minded jury to reasonably return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party may not rest upon mere allegations in the pleadings but must instead set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 324. Additionally, a party must be able to put facts to be considered in support of or opposition to a motion for summary judgment in an admissible form. *See Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 407 (D. Md. 2015).

A district court is obligated to thoroughly analyze an unopposed motion for summary judgment to determine whether the moving party is entitled to summary judgment as a matter of law. *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the district court must still proceed with the facts it has before it[.]" *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (internal quotation

marks omitted).

## III. DISCUSSION

As discussed above, the instant action arises out of four instances where Plaintiff allegedly performed services for Defendant but was either not paid for his services or was only partially paid for his services.[8] For each of these instances of non-payment or under-payment, Plaintiff alleges four theories of recovery: (1) breach of contract (Count One); (2) detrimental reliance (Count Two); (3) unjust enrichment (Count Three); and (4) quantum meruit (Count Four).[9] ECF No. 6-1 at 4–9.

Below, the Court first discusses whether, for each alleged instance of non-payment or underpayment, Plaintiff submits sufficient evidence to establish Defendant's liability under a breach of contract theory.[10] Second, finding that Plaintiff sufficiently supports his breach of contract claims, the Court determines whether Plaintiff submits sufficient evidence to establish

---

[8] Defendant's Counterclaim for breach of contract also arises out of the same four instances in which Defendant requested Plaintiff to perform services on its behalf. ECF No. 13 at 5–7.

[9] Plaintiff also includes a claim of quantum valebant (Count Five), which only differs from quantum meruit in that goods must be involved. *See ABB, Inc. v. Pena*, No. L-10-83, 2011 WL 906651, at *3 (S.D. Tex. Mar. 15, 2011). However, like the Court did in its previous memorandum opinion, the Court will refer to both theories of liability as quantum meruit for the purposes of this memorandum opinion because the presence of goods is not at issue. ECF No. 11 at 6 n.4.

[10] Because, for each instance of Defendant's non-payment or underpayment, the Court finds Defendant liable under a breach of contract theory, the Court does not discuss Plaintiff's alternative theories of liability. Once it is established that there is an enforceable contract between the parties, the Plaintiff may no longer recover under the theories of detrimental reliance (promissory estoppel), unjust enrichment, or quantum meruit. *See J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp.3d 593, 609 (D. Md. 2015) (stating that under Maryland law, "[o]nce it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties . . . then a party may no longer recover under the theory of promissory estoppel [*i.e.*, detrimental reliance]." (internal quotation marks and citation omitted) (ellipsis in original)); *Cap. Funding Grp., Inc. v. Credit Suisse Sec. (USA) LLC*, No. 0081 Sept. Term, 2014, 2015 WL 9239133, at *6 (Md. Ct. Spec. App. Dec. 16, 2015) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties. . . . [U]njust enrichment and quantum meruit, both quasi-contract causes of action, are remedies to provide relief for a plaintiff *when an enforceable contract does not exist* but fairness dictates that the plaintiff receive compensation for services provided." (internal quotation marks and citations omitted) (emphasis added)).

7

the amount of damages. Finally, the Court addresses whether Defendant's Counterclaim survives Plaintiff's Motion for Summary Judgment.

### A. Liability for Breach of Contract

To establish a claim for breach of contract, a plaintiff first needs to establish the existence of a contractual obligation. *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011), *aff'd sub nom. Shailendra Kumar, P.A. v. Dhanda*, 43 A.3d 1029 (Md. 2012). "To establish that a binding contract was made, a plaintiff must adduce evidence of an offer and an acceptance, and of a meeting of the minds as to the essential terms of the contract." *ABT Assocs., Inc. v. JHPIEGO Corp.*, 9 F. App'x 172, 176 (4th Cir. 2001) (citing *Safeway Stores, Inc. v. Altman*, 463 A.2d 829, 831 (Md. 1983)). Second, a plaintiff needs to show a breach of the contractual obligation. *Kumar*, 17 A.3d at 749. Third, and finally, a plaintiff must prove that he sustained damages as a result of the breach. *Id.*[11]

#### 1. The Procurement and Supplying of Modular Containers

With respect to the parties' alleged agreement that Plaintiff would procure modular containers and their related supplies and equipment in exchange for payment, Plaintiff submits sufficient evidence to establish Defendant's liability under a breach of contract theory.

As to the first element of a breach of contract claim, Plaintiff attaches evidence demonstrating the existence of a binding contract. First, Plaintiff attaches an affidavit to his

---

[11] The Court notes that Maryland's statute of frauds does not bar any of Plaintiff's claims. If the Court interprets the agreements at issue as contracts for services, the services were performed within one year, Md. Code Ann., Cts. & Jud. Proc. § 5-901; and if the Court interprets the agreements as contracts for goods, those goods were either received and accepted by Defendant or Plaintiff has made commitments for their procurement, Md. Code Ann., Com. Law § 2-201(3). *See, e.g.*, ECF No. 26-2 ¶¶ 3, 6 (Defendant requested the procurement of modular containers in July 2017 and the modular containers were delivered on July 28, 2017); *id.* ¶¶ 8, 9 (Defendant requested the procurement of a batch plant on October 15, 2017 and the batch plant was delivered on November 5, 2017); *id.* ¶ 9 (Defendant requested procurement of office space in November 2017); ECF No. 26-7; ECF No. 8-3 (commercial lease dated November 2017); ECF No. 26-2 ¶ 12 (Defendant requested the procurement of visas in December 2017, and Plaintiff procured seven visas by January 2018 for a cost of $22,000).

Motion for Summary Judgment in which he testifies that Defendant directed him to procure modular containers and related supplies for Defendant's subcontractor, Limitless. ECF No. 26-2 ¶ 3. Specifically, Plaintiff states in his affidavit that Limitless had previously contracted with Mr. Abed, but, upon Mr. Abed's default, Defendant directed Plaintiff "to perform in place of Mr. Abed[] and promised to pay [him] accordingly." ECF No. 26-2 ¶¶ 4–5. This establishes Defendant's offer. Plaintiff also shows acceptance of the terms of Defendant's offer through a showing of full performance. *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 526 n.7 (Md. 1996) ("A unilateral contract is a contract which is accepted, not by traditional acceptance, but by performance."). Plaintiff testifies that he "procured the modular living containers and other necessary supplies and equipment, including, but not limited to[,] air conditioning units, water tanks, cables, pipes, beds, tables, and office and residential furniture[,]" ECF No. 26-2 ¶ 6, and provides receipts for some of those purchases, ECF No. 26-5. "The containers and constituent supplies and equipment were delivered to [Defendant] on or about July 28, 2017." ECF No. 26-2 ¶ 6. Finally, Plaintiff establishes a meeting of the minds as to the essential terms of the contract by stating in his affidavit that Defendant directed him "to perform in place of Mr. Abed" and promised to pay him "accordingly[,]" ECF No. 26-2 ¶ 5, and by attaching the original contract between Limitless and Mr. Abed that outlines, among other things, what items Defendant needed and how much Defendant was willing to pay for each item. ECF No. 26-4 at 9.

As to the second and third elements of a breach of contract claim, Plaintiff presents sufficient evidence of a breach and the resulting damages. The cost to Plaintiff to obtain all the required items was $547,400, ECF No. 26-2 ¶ 6, and the price stated in the original contract between Limitless and Mr. Abed was $495,890, ECF No. 26-4 at 9. However, Plaintiff states in

his affidavit that Defendant has only made payments in the aggregate amount of $400,000. ECF No. 26-2 ¶ 7. By failing to pay the full amount, Defendant has breached the contract, causing Plaintiff to suffer damages. *Id.* ("partial payments").

Thus, Plaintiff submits sufficient proof to support all three elements of a breach of contract claim based on his procurement of modular containers and related supplies, and Plaintiff is entitled to summary judgment as to liability on this claim.

### 2. The Purchase of a Batch Plant

Likewise, with respect to the parties' alleged agreement that Plaintiff would order a batch plant in exchange for $63,000, Plaintiff submits sufficient evidence to establish Defendant's liability under a breach of contract theory.

As to the first element of a breach of contract claim, Plaintiff sufficiently establishes the presence of a binding agreement. First, he establishes there was an offer, stating in his affidavit that Defendant directed him to order a batch plant from Babylon Company and that Defendant agreed to purchase the batch plant for $63,000. ECF No. 26-2 ¶ 8. Second, the Plaintiff establishes acceptance through performance, stating that the batch plant was delivered to Defendant on November 5, 2017. *Id.* ¶ 9. Third, Plaintiff establishes a meeting of the minds regarding the essential elements of the contract—*i.e.*, the item to be purchased (a batch plant), from where (Babylon Company), and the price ($63,000). ECF No. 26-2 ¶¶ 8–9; ECF No. 26-6 (purchase order for batch plant).[12]

Moreover, Defendant has recognized the existence of the agreement. Jim Pugh, the general manager for Defendant, sent an email to Plaintiff acknowledging Defendant owed

---

[12] Plaintiff's name is not on this purchase order, but Plaintiff states in his affidavit that he or Mr. Waddah, whose interests have been assigned to Plaintiff, supplied the funds for all the purchases on behalf of Defendant. ECF No. 26-2 ¶ 15.

Plaintiff money under the terms of the agreement and stating Defendant's intention to make a payment. ECF No. 26-2 ¶ 13; ECF No. 26-11. Additionally, Defendant acknowledged the existence of the agreement in its Counterclaim. ECF No. 13 at 6 ("[Plaintiff] agreed to provide to [Defendant] certain components for a batch plant and concrete finishing equipment.").

Plaintiff also establishes the second and third element of his breach of contract claim— *i.e.*, breach and damages. Plaintiff states that despite his performance and the delivery of the batch plant, ECF No. 26-2 ¶ 9, Defendant has only paid him $44,000 of the $63,000 owed, leaving a balance of $19,000. *Id.* ¶ 8; *see* ECF No. 26-11 (stating that Defendant paid Plaintiff 50% of the remaining $38,000 owed for the batch plant, which would leave a $19,000 balance).

Thus, Plaintiff sufficiently supports his breach of contract claim to the extent it is based on Plaintiff's purchase of a batch plant for Defendant, such that the Court grants summary judgment in Plaintiff's favor on this claim with respect to liability.

### 3. The Procurement of Office Space in Baghdad Through Obtaining of a Commercial Lease

Plaintiff sets forth sufficient evidence to support a breach of contract claim based on Defendant's failure to fully pay Plaintiff for the procurement of commercial office space in Baghdad.

As to the first element of a breach of contract claim, a binding contract, Plaintiff states in his affidavit that Defendant directed him to procure office space in Baghdad to be used by Defendant and that, consequently, Plaintiff procured a commercial lease on Defendant's behalf at a cost of $12,000, showing an offer and an acceptance. ECF No. 26-2 ¶ 9; ECF No. 26-7 (copy of the commercial lease, which is in Arabic). Plaintiff also attaches to his Motion an uncontested invoice billing Defendant $12,000 for the one-year lease Plaintiff procured, ECF No. 26-9, and the details of a wire transfer through which Defendant paid Plaintiff $1,000 of the $12,000 owed,

ECF No. 26-2 ¶ 10; ECF No. 26-8. These documents reflect the details of the alleged agreement between Defendant and Plaintiff and satisfy the "meeting of the minds" element of an enforceable contract. ECF No. 26-9. Defendant, through its silence, leaves these pieces of evidence uncontested. Because Defendant has not opposed Plaintiff's Motion and has not presented any evidence to the contrary, the Court finds that such evidence sufficiently establishes Plaintiff's claim that in exchange for procuring office space for Defendant, Defendant promised to reimburse Plaintiff.[13]

Plaintiff also establishes a breach and resulting damages by stating in his affidavit that Plaintiff procured the commercial lease on Defendant's behalf at a cost of $12,000, Defendant wired Plaintiff only a "partial payment" of $1,000, and Defendant owes Plaintiff $11,000 on the office lease. ECF No. 26-2 ¶¶ 9–11.

Thus, Plaintiff sets forth sufficient evidence, under a breach of contract theory of liability, to establish Defendant's liability for its failure to repay Plaintiff in full for Plaintiff's procurement of the commercial lease. The Court grants summary judgment in Plaintiff's favor on the liability portion of this claim.

### 4. The Procurement of Visas

Finally, Plaintiff presents sufficient evidence to establish a claim for breach of contract based on Defendant's refusal to pay Plaintiff for his procurement of seven visas for Defendant's

---

[13] Moreover, Plaintiff's role as an agent of Defendant—authorized to manage Defendant's Iraq branch and authorized to make monetary decisions with Defendant's CEO's approval—lends support to the existence of an agreement such as the one described here, where Defendant directed Plaintiff to procure the commercial lease for Defendant's office space and in exchange reimbursed Plaintiff for the cost of that lease. ECF No. 26-3 (Plaintiff's appointment as branch manager for Defendant's branch in Iraq); *see also* ECF No. 26-2 ¶ 14 (stating that Plaintiff's actions were made with the approval of Jack Perry, Defendant's CEO). Such a contract appears to be consistent with the parties' course of dealing as described by Plaintiff's affidavit. ECF No. 26-2 (describing four instances where Plaintiff was asked to procure items and Defendant paid Plaintiff in return); *see also* ECF No. 13 at 5 (Defendant's counterclaim stating that Defendant asked Plaintiff to supply certain requirements to Defendant as part of its relationship with Plaintiff).

employees.

Defendant admits in its Counterclaim that there was binding agreement between the parties regarding the procurement of visas, and, therefore, the first element of a breach of contract claim is satisfied. Specifically, Plaintiff "agreed to procure and provide the visas" and Defendant "agreed to pay him for those services." ECF No. 13 at 5. As to the second and third elements of a breach of contract claim, Plaintiff sets forth sufficient evidence to establish breach and damages. Plaintiff states in his affidavit that, at Defendant's request, he "procured visas for seven individuals, at a cost of $22,000[,]" but the employees never arrived in Iraq to collect the visas and Defendant refused to pay for the visas and the related processing and procurement services. ECF No. 26-2 ¶ 12; *see also* ECF No. 26-10 (invoices billing Defendant for Plaintiff's procurement of the seven visas). While Defendant set forth allegations contradicting Plaintiff's version of events in its Answer and Counterclaim, ECF No. 13 at 6, Defendant has not opposed this Motion and does not present any evidence contradicting Plaintiff's affidavit. *Celotex Corp.*, 477 U.S. at 322–24 (stating that, under the standard of review for a summary judgment motion, the non-moving party may not rest upon mere allegations in the pleadings but must instead set forth specific facts illustrating genuine issues for trial). Thus, the Court grants summary judgment in Plaintiff's favor on the liability issue of this claim as well.

### B. Damages for Breach of Contract

While the Court grants summary judgment in Plaintiff's favor on the liability portion of his breach of contract claims, the Court denies summary judgment as to damages because Plaintiff submits conflicting evidence regarding the amount of money Defendant still owes.

First, as to Plaintiff's breach of contract claim based on his procurement of modular containers and related supplies and equipment, Plaintiff claims in his affidavit that the cost of

procuring the modular containers and related items was $547,440, Defendant has paid him $400,000, and thus Defendant owes $147,000 plus prejudgment interest. ECF No. 26-2 ¶¶ 6–7, 16–17. However, the contract between Limitless and Mr. Abed—the contract outlining the obligations Defendant directed Plaintiff to perform—outlines a total price of $495,890, ECF No. 26-4 at 9, which the contract states is fixed, *id.* at 2.[14]

Second, adding to the uncertainty surrounding the damages due for Plaintiff's first breach of contract claim as well as creating an issue regarding damages for Plaintiff's second breach of contract claim, "Schedule 4" of the contract between Limitless and Mr. Abed, which lists the relevant prices of the items Limitless/Defendant needed, includes in the list a "Cement Plant" for a price of $63,000. *Id.* at 9. As discussed above, *see supra* § III.A.2, Plaintiff's second breach of contract claim is based on Plaintiff's procurement, for $63,000, of a "batch plant[,]" which Plaintiff defines as a mechanical structure capable of mixing, storing and casting concrete. ECF No. 26-2 ¶ 8. It is unclear whether the cement plant in Schedule 4 of the contract between Mr. Abed and Limitless, which Plaintiff presumably procured when he performed in Mr. Abed's place, is the same as the batch plant, the procurement of which Plaintiff uses as the basis for another breach of contract claim. If the cement plant and the batch plant are the same, Plaintiff cannot claim damages twice for Defendant's failure to adequately pay for the plant's procurement.

Third, with respect to Plaintiff's breach of contract claim based on the procurement of office space, there exists contradictory evidence regarding the cost of the office space, which

---

[14] The receipts Plaintiff attaches to his Motion for Summary Judgment, allegedly showing "expense incurred by" Plaintiff, ECF No. 26-2 ¶ 6, provide no additional clarity because (1) the receipts are in Arabic and Plaintiff has not provided a translation, ECF No. 26-5; and (2) to the extent the translations Defendant provided as part of its Motion to Dismiss are accurate, the receipts do not seem to reflect the total cost to Plaintiff of procuring the modular containers and associated items, ECF No. 8-2.

affects the amount of damages Defendant owes. Plaintiff alleges that the cost to him was $12,000 and that Defendant still owes $11,000 after a partial payment of $1,000. ECF No. 26-2 ¶¶ 9–11. However, the lease Plaintiff attached to his Motion, to the extent Defendant's translation of the document is correct, states that: "The tenant leased the apartment from the landlord at $2000 a month for one year[,] [and] [h]e paid rent for one year [*i.e.*, $24,000]." ECF No. 26-7 (Arabic copy); ECF No. 8-3 (English translation). Thus, there is a question of fact regarding the amount of damages at issue for this claim as well.

Plaintiff only supports his claim for damages with respect to his fourth breach of contract claim, based on Defendant's refusal to pay Plaintiff for the procurement of seven visas. Plaintiff alleges that the cost to him of procuring the requested visas was $22,000 and that Defendant refused to pay that amount. ECF No. 26-2 ¶ 12. Moreover, Plaintiff submits two invoices billing Defendant a total of $22,000 for seven visas. ECF No. 26-10.

Because three out of the four breach of contract claims include contradictory evidence regarding damages, the Court denies Plaintiff's request for summary judgment with respect to damages.

    **C.    Counterclaim**

Defendant set forth a breach of contract counterclaim in its Answer, alleging that Defendant asked Plaintiff to supply certain requirements, but Plaintiff breached the agreement when he "falsified documentation and information, including invoices and contracts and failed to deliver that which he promised to deliver." ECF No. 13 at 5. Specifically, Defendant claims that (1) Plaintiff never provided the visas he agreed to procure, even though Defendant paid him to do so, and instead stole U.S. Passports belonging to Defendant personnel, *id.*; (2) Plaintiff did not provide the components or equipment for the batch plant in a timely manner and did not provide

some components and equipment at all, *id.* at 6; and (3) the containers delivered to Defendant did not satisfy Defendant's specifications and were delivered late, *id.* Defendant further claims that due to these breaches, Plaintiff has damaged Defendant in the amount of not less than $199,000. *Id.* at 7. In rebuttal of these claims, Plaintiff states in his affidavit that he does not owe any money to Defendant and has fully performed all of his obligations to Defendant. ECF No. 26-2 ¶ 18. Defendant has not responded and provides no evidence to support any element of a breach of contract claim against Plaintiff. Thus, the Court grants summary judgment in Plaintiff's favor as to Defendant's Counterclaim for breach of contract.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is grant, in part, and denied, in part. A separate Order shall issue.

Date: <u>June 1, 2021</u>                                              /s/_____
                                                                                           GEORGE J. HAZEL
                                                                                           United States District Judge