**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **WADHAH RAAD ALMILAJI,** | * |
|     **Plaintiff,** | * |
| v. |     Case No.: GJH-18-2435 |
| | * |
| **JS INT'L INC.,** | |
| | * |
|     **Defendant.** | |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Wadhah Raad Almilaji originally brought this civil action against Defendant JS International, Inc., alleging breach of contract, or in the alternative, detrimental reliance, unjust enrichment, quantum meruit, or quantum valebant. The Court previously granted Plaintiff's unopposed Motion for Summary Judgment as to liability on the breach of contract claims and denied the motion in all other respects.[1] ECF No. 31. Now pending before the Court is Plaintiff's unopposed Renewed Motion for Summary Judgment as to Damages. ECF No. 36. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Plaintiff's Renewed Motion for Summary Judgment is granted.

**I.    BACKGROUND[2]**

The basic facts of this case were set forth in the Court's June 1, 2021, Memorandum Opinion, ECF No. 31 at 1–6,[3] and remain undisputed, though Plaintiff now includes additional

---

[1] The denial was without prejudice as to Plaintiff's damages on the breach of contract claim. ECF No. 32.

[2] These facts are either undisputed or viewed in the light most favorable to Defendant as the non-moving party.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

1

facts with respect to the damages he now seeks. The Court briefly sets forth the subsequent facts relevant to Plaintiff's damages as well as the procedural history relevant to the now pending Renewed Motion for Summary Judgment as to Damages, ECF No. 36.

### A. Factual Background

On June 27, 2017, Defendant hired Plaintiff as the branch manager for its new Iraq branch and authorized him to act on its behalf. ECF No. 36-2 ¶ 2; ECF No. 36-3. The instant action arises out of four separate instances where Plaintiff exercised this delegated authority, specifically with respect to: (1) procuring and supplying modular containers for one of Defendant's subcontractors, ECF No. 6-1 ¶¶ 7–11; ECF No. 36-2 ¶¶ 3–7; (2) purchasing a "batch plant" from Babylon Company, ECF No. 6-1 ¶¶ 12–13; ECF No. 36-2 ¶¶ 8–9, 13; (3) procuring a commercial lease for office space in Baghdad, ECF No. 6-1 ¶¶ 13–15; ECF No. 36-2 ¶¶ 9–11; and (4) procuring several visas for Defendant's employees, ECF No. 6-1 ¶ 16; ECF No. 36-2 ¶ 12.

In July 2017, Defendant directed Plaintiff to procure and supply modular containers for living quarters for one of its subcontractors, specifically, a Turkish company called Limitless. ECF No. 36-2 ¶ 3. Limitless previously contracted with Hayder Raad Abed, an individual who ultimately failed to provide the required materials. *Id.* ¶ 4; ECF No. 36-4.[4] Thereafter, Defendant directed Plaintiff to perform in place of Mr. Abed, promising to pay Plaintiff accordingly. ECF No. 36-2 ¶ 5. Plaintiff then procured the modular living containers and other required supplies including, but not limited to, air conditioning units, water tanks, cables, pipes, beds, tables, office and residential furniture. *Id*. ¶ 6. Plaintiff now adds, which Defendant does not contest, that on

---

[4] Plaintiff includes the original contract between Limitless and Mr. Abed. ECF No. 36-4. Schedule 4 of this contract notes the specific items Limitless required and their respective prices. ECF No. 36-4 at 9.

June 26, 2017, M. Hakan Kaplan, the Deputy Manager for Limitless, emailed Mustaga Muafak Wahhab[5] requesting that he procure additional goods to be delivered with the modular living containers, which caused the total cost of the project to increase from $495,890 to $547,440. ECF No. 36-13 ¶ 4–5. The containers and additional living supplies were delivered on July 28, 2017 at a total cost of $547,440.00 to Plaintiff. ECF No. 36-2 ¶ 6; ECF No. 36-14 at 2 (email correspondence and materials invoice totaling $547,440.00). Between July 28, 2017 and December 20, 2017, Defendant made partial payments to Plaintiff in the aggregate amount of $400,000.00, thus leaving an outstanding balance of $147,440 due to Plaintiff. ECF No. 36-2 ¶ 7.[6]

Plaintiff now additionally submits, which Defendant does not contest, that when his business partner Mr. Wahhab received the change order for additional goods and materials to be delivered with the modular living containers, as described above, the batch plant—a mechanical structure capable of mixing, storing, and casting concrete—was removed from the list and the total price calculation. ECF No. 36-13 ¶ 7; ECF No. 36-14 at 2 (materials invoice without any entry or price for batch plant). Then, on October 15, 2017, through a separate invoice, Defendant directed Plaintiff to order the batch plant from Babylon Company.[7] ECF No. 36-13 ¶ 8; ECF No. 36-15 (separate purchase order for batch plant listing vendor as Babylon Company and cost as

---

[5] Plaintiff states that Mr. Wahhab is his business partner, ECF No. 36-1 at 3, and that he has assigned his interest(s) in any claim(s) against Defendant to Plaintiff. ECF No. 36-2 ¶ 15; ECF No. 36-12.

[6] Plaintiff's Renewed Motion for Summary Judgment as to Damages, ECF No. 36-1, argues that the total amount owed for the modular containers and additional supplies is $147,000.00, *id.* at 3, though the difference between $547,440 and $400,000 is $147,440 not $147,000. As such, the Court interprets this as a calculation error and calculates that the remaining balance owed as to this particular claim as $147,440.

[7] Plaintiff does now acknowledge that the "cement plant" listed at Schedule 4 of the contract between Limitless and Mr. Abed for the purchase of materials and goods, ECF No. 36-4 at 9, is the same item as the batch plant, which forms a separate basis for another of Plaintiff's breach of contract claim, *see* ECF No. 36-13 ¶ 6.

3

$63,000).[8] Defendant agreed to purchase the batch plant for $63,000, but only paid Plaintiff $44,000, thus leaving a balance of $19,000. ECF No. 36-2 ¶ 8; ECF No. 36-15. The batch plant was delivered to Defendant on November 5, 2017. ECF No. 36-2 ¶ 9. Later, on January 25, 2018, Jim Pugh, Defendant's General Manager, emailed Plaintiff and acknowledged the then-remaining debt for the batch plant, which was $38,000 at the time, and told Plaintiff that Defendant was making a second payment for "50% of the remaining $38,000[,]" bringing the amount Defendant owed Plaintiff to the current balance of $19,000. *Id.* ¶ 13.

In November 2017, Defendant next directed Plaintiff to procure an office space in Baghdad, to be used as Defendant's office, which Plaintiff now states he did on behalf of himself and Defendant. ECF No. 36-2 ¶ 9; ECF No. 36-7 (copy of commercial lease in Arabic). In his supplemental affidavit, ECF No. 36-13, Plaintiff, providing further detail, states that "although [he] paid $24,000 for the entire year, [he] is only seeking one-half of that amount, constituting what the Defendant agreed to pay." *Id.* ¶ 13. Plaintiff also includes copies of his text message exchanges with Allen Hall, Defendant's Division Manager, in which he accepts Plaintiff's offer to split the cost of the lease evenly, which Defendant does not now contest. ECF No. 36-16 (text message exchange between Plaintiff and Allen Hall). On November 24, 2017, Defendant wired Plaintiff a partial payment of $1,000 for the office lease on Defendant's behalf, ECF No. 36-2 ¶ 10; ECF No. 36-8 (completed payment receipt showing $1,000 payment from Defendant to Plaintiff), which brought Defendant's remaining balance owed on the office lease to $11,000. *See* ECF No. 36-9 (invoice reflecting $12,000 balance for one year lease). And on the same day,

---

[8] Though Plaintiff's name does not appear on the purchase order, ECF No. 36-6, Plaintiff's affidavit—which Defendant again has not contested—states that Plaintiff or Mr. Wahhab funded the purchases made on behalf of Defendant. ECF No. 36-2 ¶ 15. And as previously discussed, Mr. Wahhab has assigned his interest(s) in any claim(s) against Defendant to Plaintiff. *Id.*; ECF No. 36-12.

Plaintiff issued an invoice to Defendant for the remaining $11,000 owed on the lease. ECF No. 36-2 ¶ 11.

Finally, in December 2017, Defendant directed Plaintiff to procure several visas for its employees who were set to begin work in Iraq. ECF No. 36-2 ¶ 12. Plaintiff procured visas for seven individuals at a total cost of $22,000. *Id.*; ECF No. 36-10; ECF No. 36-11 (invoices showing total balance of $22,000 for the processing of seven visas plus one visa expiration fine). The seven employees never arrived in Iraq, however, and Plaintiff is still in possession of their visas. ECF No. 36-2 ¶ 12. Further, Defendant has refused to pay for the visas, related processing, and Plaintiff's procurement services, *id.*, despite Plaintiff issuing Defendant invoices for these services on December 28, 2017 and again on January 13, 2018. *Id.*; ECF No. 36-10 (Dec. 28, 2017 invoice); ECF No. 36-11 (Jan. 13, 2018 invoice).

Plaintiff states that all of his actions were taken with the explicit or implicit approval of Jack W. Perry, Defendant's Owner and CEO, or his agents or employees who purported to have authority to act on his behalf, ECF No. 36-2 ¶ 14, and that purchases made on behalf of Defendant were funded by Plaintiff and Mr. Wahhab, who assigned to Plaintiff his interest in any claim against Defendant. *Id.* ¶ 15. Plaintiff calculates that he is owed $199,000.00, which has been due to him since January 25, 2018. *Id.* ¶ 16. Further, Plaintiff calculates that he is owed prejudgment interest, at a rate of six percent (6%) per annum under Maryland law, totaling $43.079.07. ECF No. 31-1 at 4.

B. **Procedural Background**

The Court set out the complete procedural posture of this case in its previous Memorandum Opinion, ECF No. 31 at 4–6. On June 1, 2021, the Court granted, in part, and denied, in part, Plaintiff's Motion for Summary Judgment. *Id.* Specifically, the Court granted

Plaintiff's motion as to the liability portion of Plaintiff's breach of contract claims, denied, with prejudice, Plaintiff's alternative theories of recovery (detrimental reliance, unjust enrichment, quantum meruit, and quantum valebant) and denied, without prejudice, Plaintiff's motion as to the damages portion of the breach of contract claims. ECF No. 32. Moreover, the Court provided Plaintiff with the opportunity to renew his motion for summary judgment, attaching additional evidence supporting his entitlement to the requested damages, and to address the Court's concerns with respect to Plaintiff's contradictory evidence regarding damages. *Id.*

On June 16, 2021, Plaintiff filed a Motion for Extension of Time to File Renewed Motion for Summary Judgment, ECF No. 33, which the Court granted on June 30, 2021, ECF No. 35. Plaintiff filed the now pending Renewed Motion for Summary Judgment, ECF No. 36, on September 3, 2021. A Rule 12/56 noticed was mailed to Defendant on September 7, 2021, ECF No. 37, which was returned as undeliverable on September 20, 2021, ECF No. 38. Defendant has not responded to Plaintiff's Renewed Motion for Summary Judgment or otherwise communicated with the Court since its counsel's withdrawal.

## II.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The burden is on the moving party to demonstrate that there exists no genuine dispute of material fact. *See Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). Once the moving party has properly filed evidence supporting the motion for summary judgment, to defeat the motion, the nonmoving party must submit evidence showing facts sufficient for a fair-minded

jury to reasonably return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party may not rest upon mere allegations in the pleadings but must instead set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 324. Additionally, a party must be able to put facts to be considered in support of or in opposition to a motion for summary judgment in an admissible form. *See Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 407 (D. Md. 2015).

A district court is obligated to thoroughly analyze an unopposed motion for summary judgment to determine whether the moving party is entitled to summary judgment as a matter of law. *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the district court must still proceed with the facts it has before it[.]" *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Damages for Breach of Contract

In Maryland, "the amount of damages recoverable for breach of contract is that which will place the injured party in the monetary position he would have occupied if the contract had been properly performed." *Hall v. Lovell Regency Homes Ltd. P'ship*, 121 Md. App. 1, 12, 708 A.2d 344, 349 (1998). Further, prejudgment interest in Maryland is "allowable as a matter for right" in actions "under contracts providing for the payment of interest." *Baker's Exp., LLC v. Arrowpoint Capital Corp.*, No. 10-cv-2508-ELH, 2012 WL 4370265, at *27 (D. Md. Sept. 20, 2012) (quoting *Buxton v. Buxton*, 363 Md. 634, 770 A.2d 152 (2001)); *see also I.W. Berman Props. v. Porter Bros.*, 276 Md. 1, 18, 344 A.2d 65, 75–76 (1975) ("If the contractual obligation

be unilateral and is to pay a liquidated sum of money at a certain time, interest is almost universally allowed from the time when its payment was due."). And this prejudgment interest accrues "from the time the claim accrues until judgment is entered." *See Fraidin v. Weitzman,* 93 Md. App. 168, 219 (1992) (quoting *West Virginia v. United States*, 479 U.S. 305, 310–11 n. 2, (1987)). The legal rate of interest in Maryland is six percent. Md. Const. art. III, § 57; *Fed. Sav. & Loan Ins. Corp. v. Quality Inns, Inc.*, 876 F.2d 353, 359 (4th Cir.1989) (affirming that the "district court was bound by Maryland's legal rate of prejudgment interest, which is six percent.").

Given that Plaintiff has submitted additional evidence supporting his entitlement to the requested damages and has attempted to address the Court's concerns with respect to the contradictory damages evidence set forth in Plaintiff's first Motion for Summary Judgment, ECF No. 26-1, it is now appropriate for the Court to address the issue of damages. The Court will address damages with respect to each breach of contract claim separately.

1. **Modular Containers and Related Supplies and Equipment**

With respect to the breach of contract claim based on his procurement of modular containers and related supplies and equipment, Plaintiff provides an adequate evidentiary basis for an award of damages based on his additional receipt submissions. In its previous Memorandum Opinion, ECF No. 31, the Court highlighted an inconsistency with respect to this claim for damages, specifically that the contract between Limitless and Mr. Abed—the one outlining the obligations Defendant directed Plaintiff to perform—outlined a total price of $495,890, ECF No. 36-4 at 9, which the contract states is fixed, *id.* at 2, and which conflicts with Plaintiff's claimed total cost of procuring the modular containers and related items: $547,440.

Plaintiff now provides the Court with (1) an email correspondence from M. Hakan Kaplan, the Deputy General Manager for Limitless, requesting the additional materials from Mr. Wahhab and (2) a materials invoice outlining the item number, item description, quantity, unit price, and total cost, along with additional notes about several of the items. ECF No. 36-14. This materials invoice includes a new total amount of $547,440, which sufficiently clarifies to the Court how Plaintiff's total cost increased from the $495,890 stated in the original contract between Limitless and Mr. Abed, ECF No. 36-4 at 9. Because, as Plaintiff stated, Defendant made payments in the aggregate amount of $400,000, ECF No. 36-2 ¶ 7, a balance of $147,440.00 is owed to Plaintiff with respect to his procurement of the modular contains and related supplies and equipment.

2. **Batch Plant**

Plaintiff's additional evidence, likewise, provides an adequate basis to award damages based on breach of contract with respect to his procurement of the batch plant. Plaintiff now argues that, although the original contract identified the batch plant as a "cement plant" at Schedule 4, ECF No. 36-4 at 9, and included its price of $63,000 within the original total of $495,890, this item was subsequently removed from the list and the price of the contract after Mr. Wahaab signed a change order for additional goods and materials to be delivered with the modular containers. ECF No. 36-14 at 2 (materials invoice without any entry or price for batch plant); ECF No. 36-13 ¶ 7. Specifically, in his sworn supplemental affidavit, Plaintiff states that compensation for the batch plant is not duplicative because on October 15, 2017, Defendant "directed [him] to order the batch plant with a separate invoice totaling $63,000." *Id.* ¶ 8; ECF No. 36-6 (separate invoice for batch plant identifying vendor as Babylon and price as $63,000).

9

Given this additional uncontested evidence, the Court finds that the batch plant price was not included in the total price of the contract between Plaintiff and Defendant such that Plaintiff's second breach of contract claim on this basis would not be duplicative. Because Defendant made a partial payment for the batch plant totaling $44,000, a balance of $19,000 is owed to Plaintiff with respect to his procurement of the batch plant.

### 3. Office Lease

Plaintiff also provides additional evidence with respect to the breach of contract claim based on his procurement of commercial office space, which clarifies the previous contradictory evidence Plaintiff provided regarding the total cost of the space. As the Court noted in its previous Memorandum Opinion, ECF No. 31 at 15, "the lease Plaintiff attached to his Motion, to the extent Defendant's translation of the document is correct, states that: "The tenant leased the apartment from the landlord at $2000 a month for one year[,] [and] [h]e paid rent for one year [i.e., $24,000]." ECF No. 26-7 (Arabic copy); ECF No. 8-3 (English translation)," which differs from Plaintiff's claim that his cost for leasing the commercial office space was $12,000. ECF No. 36-2 ¶ 9. Through the additional evidence provided, specifically the text messages between Alan Hall, Defendant's Division Manager, ECF No. 36-16, Plaintiff provides the Court with a basis to reconcile his claim that the lease cost him $12,000, rather than the full $24,000. ECF No. 36-13 ¶ 13 ("Although I paid $24,000 for the entire year, I am only seeking one-half of that amount, constituting what the Defendant agreed to pay."). Because Defendant provided a partial payment of $1,000 to plaintiff for the office lease, ECF No. 36-2 ¶ 10; ECF No. 36-8 (completed payment receipt showing $1,000 payment from Defendant to Plaintiff), the Court finds that the remaining balance owed to Plaintiff with respect to his procurement of the office lease is $11,000.

### 4. Visas

Plaintiff, as the Court noted in its previous Memorandum Opinion, ECF No. 31 at 15, adequately supports his claim for damages with respect to his breach of contract claim for Defendant's failure to pay Plaintiff for his procurement of the seven visas. Plaintiff reiterates that his procurement of the seven visas cost $22,000, which Defendant refused to pay. ECF No. 36-2 ¶ 12. Plaintiff again submits two invoices billing Defendant a total of $22,000 for the seven visas, which Defendant does not contest. ECF No. 36-10 (Dec. 28, 2017 invoice); ECF No. 36-11 (Jan. 13, 2018 invoice). As such, Plaintiff is entitled to $22,000 for his procurement of the seven visas.

Accordingly, the Court finds that the appropriate amount owed to Plaintiff is $199,440, which is based on the following amounts owed: (1) $147,440 for the modular containers and related supplies and equipment, (2) $19,000 for the batch plant, (3) $11,000 for the office lease, and (4) $22,000 for the seven visas.[9] The Court finds that Plaintiff is owed prejudgment interest, at the rate of six percent (6%), totaling $44,908.60,[10] which is calculated from when the payment to Plaintiff was due, January 25, 2018, ECF No. 36-2 ¶ 13, until the entry of this judgment, October 25, 2021. *See Parkway 1046, LLC v. U. S. Home Corp.*, 961 F.3d 301, 311 (4th Cir. 2020) (in Maryland, prejudgment interest "accrues from when payment is due.")

---

[9] This total differs from Plaintiff's calculation by $440 because, as the Court noted previously, *see supra* § I.A., the difference between $547,440 and $400,000 is $147,440 not $147,000, as Plaintiff calculated. *See* ECF No. 36-1 at 4, 7.

[10] This amount also differs slightly from the calculation total Plaintiff provided, $43,079.07, due to the Court's total outstanding principal calculation of $199,440, rather than Plaintiff's calculation of $199,000 and the time that has passed since Plaintiff drafted the Renewed Motion for Summary Judgment on September 2, 2021.

This prejudgment interest total is calculated as the product of the daily prejudgment interest amount ($32.78 per day) and the number of days that have elapsed since January 25, 2018 (1370 days as of October 25, 2021). The prejudgment interest per day, $32.78, is calculated by first taking the total amount owed, $199,440, times the rate of six percent (6%), which equals a total of $11,966.40 in prejudgment interest per year. Then, the prejudgment interest per year is divided by 365 days in a year, which dequals $32.78 in prejudgment interest per day.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Renewed Motion for Summary Judgment as to Damages, ECF No. 36, is granted. A separate Order shall issue.

Date: <u>October 25, 2021</u>                 <u>      /s/                                    </u>
                                                                                            GEORGE J. HAZEL
                                                                                            United States District Judge